IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KIP COWGER                                                                                               PLAINTIFF

VS.                                CIVIL NO. 05-5094

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                  DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Kip Cowger, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying his claim for disability insurance benefits (hereinafter "DIB") under the provisions of Title II of the Social Security Act (hereinafter the "Act").

**Procedural Background:**

The application for DIB now before this court was filed on April 29, 2003, alleging an onset date of October 22, 2002, due to a respiratory disorder. (Tr. 56-58). An administrative hearing was held on August 18, 2004. (Tr. 154-200). Plaintiff was present and represented by counsel.

At the time of the hearing, plaintiff was fifty years old and possessed a high school education. (Tr. 12). Records indicate that his past relevant work experience ("PRW") was as an over-the-road truck driver. (Tr. 12).

On January 10, 2005, the Administrative Law Judge (hereinafter "ALJ") issued a written decision finding that plaintiff's respiratory disorder, degenerative disc disease ("DDD"), and degenerative joint disease ("DJD") constituted severe impairments, but that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC") to perform a range of light work. Finding

plaintiff unable to return to his PRW, the ALJ relied on the testimony of a vocational expert to determine that plaintiff could perform light, unskilled positions such as cashier and inventory clerk. (Tr. 17, 19).

On April 23, 2005, the Appeals Council declined to review this decision. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Although both parties were afforded the opportunity to file appeal briefs, plaintiff has chosen not to do so. (Doc. # 4).

**Evidence Presented:**

On October 23, 2002, plaintiff sought medical treatment after passing out. (Tr. 121). Records indicate that he was driving an eighteen-wheeler at approximately sixty miles per hour when the episode occurred. Plaintiff stated that he had taken a sip of water that "went down the wrong way," resulting in a coughing fit and a loss of consciousness. Dr. Bryan Abernathy diagnosed him with vasovagal syncope and probable occult asthma/reactive airway disease ("RAD") and prescribed Advair. The doctor's notes indicate that plaintiff reported to him that he was going to take three months of short-term disability. (Tr. 121).

On November 27, 2002, plaintiff complained of recurrent syncope on an almost daily basis since October. (Tr. 120). He stated that he had been feeling fine but indicated that he had been experiencing heart palpitations with shortness of breath that lasted up to five minutes at a time. Aside from sinus related symptoms, plaintiff's physical examination was unremarkable. Therefore, plaintiff was diagnosed with vasovagal syncope secondary to a cough, as well as palpitations. Dr. Abernathy then ordered a holter monitor report and an echocardiogram, and advised plaintiff to remain off of work. (Tr. 120). The holter monitor report revealed no evidence of ventricular

2

tachycardia or accelerated idioventricular rhythm, no evidence of supraventricular tachycardia, and no high grade AV block or pause. (Tr. 137). In addition, there were no symptoms reported while the holter monitor was in place. (Tr. 199). An echocardiogram report further indicated that although plaintiff had mild aortic insufficiency and trace mitral regurgitation, the overall functioning of his right and left ventricles was normal. (Tr. 139). His estimated ejection fraction rate was sixty-five percent. (Tr. 138). Records also indicate that plaintiff smoked two packages of cigarettes per day and had done so for thirty years. (Tr. 120).

This same date, Dr. Abernathy completed an attending physician's statement of disability. (Tr. 135-136). He diagnosed plaintiff with vasovagal syncope and occult asthma, noting that plaintiff's symptoms included coughing and syncope. (Tr. 135). Further, Dr. Abernathy indicated that plaintiff's condition was guarded and that he should avoid dangerous environments such as operating heavy equipment and trucks. (Tr. 136).

On December 13, 2002, plaintiff's cough had decreased, as had his smoking habit. (Tr. 118). Dr. Abernathy prescribed Advair and Singulair. (Tr. 118).

On February 13, 2003, plaintiff followed-up with Dr. Abernathy. (Tr. 116). Records indicate that plaintiff had discontinued Advair secondary to heart palpitations. Plaintiff was diagnosed with RAD with possible syncope. Due to his high cholesterol level, Dr. Abernathy also prescribed Lipitor. (Tr. 116).

On November 17, 2003, plaintiff continued to report coughing and syncope spells. (Tr. 145). However, the number of episodes had decreased. For this, Dr. Abernathy prescribed Pulmocort and referred plaintiff for a consultation with an allergist. He also recommended vocational rehabilitation. (Tr. 145).

On January 14, 2004, plaintiff was again seen by Dr. Abernathy. (Tr. 144). This time, he complained of back pain following a fall. Dr. Abernathy diagnosed plaintiff with DDD, DJD, and vasovagal syncope secondary to RAD. (Tr. 144).

This same date, Dr. Abernathy completed a physical abilities assessment. (Tr. 131-133). He stated that plaintiff could lift ten pounds frequently and twenty pounds occasionally, sit and stand for a total of one to two hours each, walk for a total of two to three hours during an eight-hour workday, frequently reach, occasionally kneel, reach above the shoulders, handle, and finger; and, never, climb, balance, stoop, crouch, crawl, or work around cold, dust, dampness, or unprotected heights. Further, he noted that plaintiff's ability to drive was restricted. Dr. Abernathy also indicated that plaintiff was permanently disabled. (Tr. 131-133).

On August 27, 2004, Dr. Abernathy treated plaintiff for left arm/shoulder pain. (Tr. 153). After noting tenderness in plaintiff's left shoulder and biceps, Dr. Abernathy diagnosed him with DJD, DDD, left acromioclavicular joint arthralgia/left subacromial bursitis, and left biceps tendonitis. For this, plaintiff was given a Depomedrol injection. Because he had discontinued Lipitor due to skin tears and bruising, Dr. Abernathy also prescribed Crestor. He then advised plaintiff to return to the clinic in three months. (Tr. 153).

This same date Dr. Abernathy completed a physician's statement. (Tr. 148-149). He diagnosed plaintiff with RAD, DDD/DJD, occult asthma, and vasovagal syncope. (Tr. 148). Dr. Abernathy noted that plaintiff had no cardiac limitations, could function in most stressful situations, and would be able to engage in most interpersonal relationships. (Tr. 149). Due to plaintiff's syncope and loss of consciousness, however, Dr. Abernathy concluded that he would not be able to

return to work. He noted that plaintiff's commercial drivers license was on hold, due to his condition. (Tr. 149).

**Applicable Law**:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

5

diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the

6

Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff alleges disability due to a number of impairments including asthma/RAD, DJD, and DDD. (Tr. 56-58). After reviewing the medical records contained in the file, we find substantial evidence to support the ALJ's conclusion that plaintiff's impairments are not totally disabling.

At the onset, we note that plaintiff has not sought consistent treatment for his lung related impairments. *See id*. Plaintiff first sought treatment in October 2002, following his accident, and continued to seek treatment until February 2003. (Tr. 116, 118, 120, 121, 135-137). Thereafter, he did not again seek treatment until November 2003. (Tr. 145). After this date, no further treatment was sought for plaintiff's asthma, RAD, or vasovagal syncope.

Further, it is also significant to note that plaintiff has continued to smoke cigarettes in spite of his lung disorders. In November 2002, plaintiff reported smoking two packages of cigarettes per day. (Tr. 120). Although he reported a decrease in this habit in December 2002, there are no records to indicate that plaintiff ever totally stopped smoking. Thus, given the fact that plaintiff has continued to smoke, we cannot say that his condition is as limiting as he contends. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (impairments that are controllable or amenable to treatment, including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including the cessation of smoking, without good reason is grounds for denying an application for benefits).

In addition, we note plaintiff sought treatment for shoulder and back problems on only two occasions during the relevant time period. He complained of back pain in January 2004, and reported left arm/shoulder pain in August 2004. *See Edwards v. Barnhart*, 314 F.3d at 966.

7

However, we note that the records reveal that plaintiff was treated conservatively on both occasions. *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). Further, there is no indication that plaintiff ever complained of chronic severe pain, or that he was ever prescribed any of the typical prescription pain medications used to treat severe pain. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). As such, we are unable to say that the ALJ was incorrect in dismissing plaintiff's subjective complaints.

After scouring the record, we are also cognizant of the fact that plaintiff's physical abilities have not been limited by any of his treating physicians. *See Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999). In fact, plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On his supplemental interview outline dated July 29, 2003, plaintiff indicated that he could care for his personal hygiene, do the laundry, wash dishes, change the sheets, iron, vacuum/sweep, take out the trash, wash his car, mow the lawn, rake leaves, perform garden work, shop for groceries and clothes, go to the bank and post office, prepare seven meals per week, pay bills, use a checkbook, count change, walk for errands and exercise, use public transportation, attend church, watch television, listen to the radio, and read. (Tr. 89-90). Plaintiff further indicated that he did not perform home or car repairs because he did not know how, rather than stating that he was unable to perform these duties. (Tr. 89). The Commissioner submits, and we agree, that the ALJ properly determined such level of activity to be inconsistent with plaintiff's subjective complaints. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive,

and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace."

9

*Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, the physician statements completed by plaintiff's treating physician, plaintiff's subjective complaints, and his medical records. On August 18, 2003, Dr. Alice Davidson, a non-examining consultative physician, completed an RFC assessment. (Tr. 122-130). After reviewing plaintiff's medical records, she concluded that plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally, as well as sit, stand, and walk for up to six hours during an eight-hour workday. (Tr. 123). Dr. Davidson also concluded that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 126). This assessment was affirmed by Dr. Robert Redd on November 6, 2003. (Tr. 130).

We also note the physician statements completed by Dr. Abernathy indicating that plaintiff is permanently disabled. While we note that Dr. Abernathy's early reports seem to suggest that plaintiff was totally unable to work, the statement completed in August 2004, reveals that plaintiff was no longer able to perform his PRW. (Tr. 149). In fact, in November 2003, it was recommended that plaintiff undergo vocational rehabilitation. (Tr. 145). Therefore, given the fact that Dr. Abernathy limited plaintiff to activities that did not include dangerous environments, such as

operating heavy equipment and trucks, and the ALJ's RFC assessment takes this into consideration, we find substantial evidence in the record to support the ALJ's RFC assessment. (Tr. 136).

In addition, we find that substantial evidence supports the ALJ's conclusion that plaintiff could perform work as a cashier and inventory clerk. (Tr. 192-193). The VE stated that a person of plaintiff's age and education, who could perform light work; occasionally work overhead, reach with the left hand, push/pull with the left hand, stoop, crouch, kneel, crawl, or climb stairs; frequently reach and push/pull with the right arm; and, could never use ropes, ladders, scaffolds, or work near extreme heat, cold, dust, fumes, or pollutants, would be capable of making a vocational adjustment to other work. (Tr. 192). Specifically, the VE stated that this person could perform work in the light, unskilled category such as cashier, which consisted of 8,800 jobs in the state and 903,000 nationally. (Tr. 193). The VE also listed the job of inventory clerk, which consisted of 650 jobs in the state, and 66,000 nationally. (Tr. 193). The VE stated if the person required a sit/stand option it would reduce the number of cashier jobs by 40 percent. (Tr. 193). As this hypothetical took into consideration the limitations the ALJ concluded were actually caused by plaintiff's impairments, the VE's testimony provided substantial evidence to support the ALJ's finding that plaintiff could perform these positions. *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (holding that vocational expert's response to a hypothetical question provides substantial evidence to support an ALJ's decision, where the hypothetical question sets forth the claimant's impairments with reasonable precision).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits and thus recommends that the decision

be affirmed and plaintiff's Complaint be dismissed with prejudice.  **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this <u>1st</u> day of May 2006.

<u>/s/ Beverly Stites Jones</u>
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE